First case, I guess we'll hear from Ms. Kwong. Are you, who's first? Good morning. May I please support Teresa Kwong for the United States. To succeed on a claim for a failure to accommodate under the Fair Housing Act, plaintiffs had to show- Oh, is that speaker there? It's not working? No. I'll stand closer, would that help? That's good. Okay. To succeed on a claim for a failure to accommodate under the Fair Housing Act, plaintiffs had to show that their request to waive the business purpose restriction was reasonable and necessary to provide individuals with disabilities an equal opportunity for housing. GIC moved for summary judgment, arguing that plaintiffs failed to show that the accommodation was necessary. GIC did not move on the reasonableness prong. Under the necessary prong, the district court should have considered only whether the waiver was necessary to provide an equal opportunity for housing for persons with disabilities. Instead, the district court looked at the conditions that GIC set forth in the MOU and required plaintiffs to show that removing the disputed conditions was necessary to provide an equal opportunity for housing. That was error. Under GIC- Let me just understand, the request for accommodation was responded to by Gibson Island Corp with 23 conditions, right? Correct. And 19 of them were agreed to. Correct. And four were not agreed to. Correct. So why are we discussing the conditions that were not agreed to at all? In other words, it seems to me the assessment under the FHA is to look at the accommodation and see whether it meets those three criteria, reasonableness, necessity, and so forth. And instead of looking at the requested accommodation as amended by the 19, the district court got off on the conditions and assessed those. And it seems to me they're irrelevant. You're correct. You're entirely correct. I mean, this is a case where- It's always a consequence. We never got an analysis on the reasonableness. That is correct. All right. I mean, you summed it up perfectly that what the district court did wrong. Although the defendants raised the summary judgment motion only on the necessary prong, all their conditions, all the arguments they had were arguments that pertain to the reasonableness prong, that their claim that the waiver would impose substantial administrative and financial burdens on the defendant. And even though they put all those considerations under the umbrella of the necessary prong, the district court should have considered those conditions as factors under reasonableness. And it actually could have just said that you didn't show genuine issues of what we're saying. I was just wondering if you could tell us who in your view bears the burden there of production once it's established that there's a need for accommodation, who bears the burden? The defendant bears the burden. So in the reasonableness analysis, the plaintiff shows that their requested accommodation, the waiver of the business restriction was reasonable. And if the defendant has a claim that the accommodation would impose burdens on it, it is obligated to come forth with a burden of, it's obligated to come forth with some support for that claim. And that's nothing new. That's actually what happens in practice. And that's what happened in Scoggins. In Scoggins, this court noted that the defendant provided overwhelming evidence showing that the requested accommodation was unreasonable. And that doesn't mean that there is a burden shifting. The plaintiff maintains the burden of persuasion, but it makes sense for the defendant to have a burden of production. Counsel, can I ask you a question? Assume hypothetically, I agree with you that the district court misunderstood the necessity inquiry. What do you want us to do? Do you want us to find that this accommodation is necessary as a matter of law? Do you want it to go to a jury or do you want us to send it back to the judge to look at it again? I think you should send it back to the judge because the judge just misapplied, considered the wrong thing. I know, but how hard is it to figure out? Do we really need to remand on this? What would be the plausible argument that it's not necessary? There's no other such home on Gibson Island. I actually think you could find, you could find as a matter of law, there is actually no alternative to the request for a waiver because there's no alternative to waiving this restriction that would enable the plaintiffs to operate a home for senior citizens with disabilities on Gibson Island. But I think if you would need to still remand for the district court to consider the reasonable- Oh, sure. I'm sorry. I just meant on necessity. What do you want us to do? I think you could just say that as a matter of law, there is no alternative. I mean, there's no way for the plaintiffs to operate this home without a waiver of the business restriction, but that the district court would need to- It seems to me that we've got everything upside down. The necessity argument addresses the accommodation, whether the accommodation is necessary, but the gatekeeper is whether the accommodation is reasonable vis-a-vis the island. So if we had a request to put in a 10-story veterans hospital for the disabled, that might not be reasonable in this residential community. That's correct. Whereas other interim sizes may be reasonable. We had zero analysis. The question is, do you have to put in a Walmart on a residential area? I mean, that's the type of inquiry that has to be made, and we just don't have that record. And I think that's correct. And it's exactly what happened in Bryant Woods Inn, although the court said the bulk of the decision rested on the necessary prong, the court actually did go through reasonableness and then necessity. And that's what the 11th Circuit said in Shaw, that you should determine whether the requested accommodation here, the waiver request, was reasonable before you jump to consideration of the defendants' objections and counterproposals. I have a question about the necessary prong. I know that there's no accommodation for people with disabilities or the elderly in terms of a group home on Gibson Island, but if there was a home, for example, right across the water on the shore that could easily be reached from Gibson Island, would that satisfy the necessary requirement? Well, I don't think so because the statute actually provides that an equal opportunity for housing of the plaintiff's choice. So the thing is here, what you have to ask is whether the waiver was necessary to operate the home on Gibson Island. There's actually no contention by GIC that a waiver was necessary in order for plaintiffs to operate the home. Well, I thought there was a way I construed the covenant was that this is a residential community and that no business can be put in there without approval of the board. And obviously in making the assessment of a business, you have to look at a bunch of factors in the context of a residential area. And it seems to me we don't have that analysis. I mean, this may be a very reasonable use in a residential context, whereas the 10-story hospital may not be a reasonable use in this context. So it seems to me that case ought to be made. The problem in this case as I see it is that the analysis would have been fairly straightforward, but for the fact that there was an animosity between the plaintiff and the Gibson Island Corp. I mean, there was a personal relationship that colored everything. And I don't know whether that's a legitimate role or not. Gibson Island was worried about being sued continuously. And there are some anecdotal facts that make this plaintiff sort of difficult to deal with, it seems to me, maybe if it's true. But I don't know if that's a legitimate factor, but that clearly seemed to have played a role in the history of the transaction in this case. But I see we've gone over our time. Why don't I hear from Mr. Clapper? Okay, thank you so much. I'm gonna focus on the one and only small area where we disagree with the Department of Justice. We are here to focus, or I wanna focus on our cross motion for summary judgment and why this court should remand with directions to grant the 2020, June 2020 accommodation as a matter of law. The burden shifted- Just to address that just briefly. The burden shifted from the 20th to the 20th of June.  There was no argument or analysis on the reasonableness. And it seems to me the entire case, when you go into a residential area with a proposed business and there's a covenant on the land, which says you can't put businesses here without the board of directors waiver, it seems to me then the request, you have to assess first whether that's a reasonable accommodation. Well, Your Honor- If we have my hypothetical, the 10 story veterans hospital taking care of the disabled veterans there, somebody may say that's unreasonable. There's too much traffic maybe, maybe the burdens on the utilities and so forth. But maybe this is fine, I don't know. But the record does not address it, the court didn't address it. This record perfectly addresses this, Your Honor. And the last time I was up in front of this court in May, I was telling the court, please don't decide this in the first instance, please remand. And the court said, we can watch this video for ourselves. The application of the law is clear to this record. And they affirmed the conviction against my client. And they said, we can decide. And this is going to be another question- We have to review the district court, not to supplant the district court's role. But review the summary judgment record, Your Honor. Because the conditions that you noted, and this is following up on Judge Harris's question, the conditions that they attempted to impose were unreasonable as a matter of law. First of all- We're going right off where the court meant. And I think that may have caused the court problem. The conditions have nothing to do with this. The conditions that were agreed to are modifications to the accommodation request. The conditions that were not agreed to are irrelevant, because the accommodation stands as amended by the agreed to. We're not talking about conditions, we're talking about whether the requested accommodation was reasonable, was necessary, et cetera. Well, but however, in that proper analysis, Your Honor, it shifted to the undue burden. And the undue burden that they're trying to alleviate, that they have said was the septic condition and the Lucy as burden conditions. And those are, wherever they fit in the analysis- They turned it down. Yeah. Why does it matter that we look at why they turned it down? They could have turned it down because they don't want anything- But Your Honor, so for example, you talked about the Mr. Lucy is difficult issue. Now, if that is their defense on, is this their defense on summary judgment? And under Maryland law, they actually bear the burden because they did reject Bryant Woods and say that once we made the prime case, the burden shifts on persuasion. So this is not a condition that applies to any other property. No case has ever held that's a valid consideration, nor could you consistent with the Fair Housing Act say that a requester being a personally difficult person can be an undue burden, because people who are trying to build through homes where none currently exist are invariably viewed as troublemakers. And I get it. You look at his emails and his emails look like a pro se file, right? And it's like, this is hard to read, you go through. But no problems when you testified orally. And this is in the record. My client, Mr. Lucy has ADHD. He received an accommodation at the University of Virginia to take his exams orally because this is what his written product looks like. Mr. Klepper, the district court also ruled against you on summary judgment on both your FHA retaliation and discrimination claims. Yes. Can you explain your theory in your retaliation claim and what evidence was presented to create a genuine issue of material effect on that claim? Oh, on that claim, your honor, I mean, what we are talking about here, they refer to in the record as having a, what is it? The asymmetrical and unfair fight. They're referred to a multidisciplinary approach, legal and extra legal. This is what they put in writing. And they said, how about we recruit the Waltjens which is to harass them personally? What if we get the entire community together? The island is littered with screw Lucy stickers. The stop signs say stop Lucy underneath them. People have added those. Were those signs created and distributed by the defendants? It was encouraged by the defendants. Is there evidence of that in the record? The evidence in the record is yes. Extra legal approach. They talked about it. They talked about recruiting his enemies. This is harassment. And on that point, your honor, I would like to refer you to the, what is this? It's the playbook. This is the Kathy Frederick email joint appendix 1783. This, on that point, what happened was, this is President Daley, and he is emailing back and forth with somebody who is a veteran of fighting the Shepard Pratt expansion into the Rockston neighborhood. And what she said was, we're able to slow them down with parking restrictions, regulations, matters like that. But you know where the real victory was? Shepard Pratt said, had they known there'd be such intense community opposition, they never would have tried to do that. They managed to deter Shepard Pratt from ever doing anything like that again. So Shepard Pratt would never try to do a second group home in Rockston. And Mr. Daley responded, great, we'll do our best to defend our deeds and easements versus the Fair Housing Act. This is designed. This entire campaign is designed. And a jury under 404B evidence, Your Honor, could very easily find that. Can I ask you a question about the way the argument you're making now and the reasonable accommodation argument fit together? Your view is that there's enough evidence to go to a jury on the theory that these conditions are pretexts for discrimination or for retaliation. If that's right, that would make them kind of per se unreasonable as reasonable accommodations. So how come they are jury questions when it comes to discrimination and retaliation, but you think you can get summary judgment that they are unreasonable as a matter of law? You see what I'm saying? Thank you, Your Honor. In the accommodations context, the pretext analysis would be, there is case law, I'm blanking on the case at the moment, that even if you have found that facially there was these burdens were okay, there might be a jury question. However, these are unreasonable as a matter of law where I don't even need to get to that. You don't need to show animus. You merely need to show it should have been granted. It's the worst case scenario for us, Your Honor. Just so I'm clear, what is it that makes them unreasonable as a matter of law that is not related to the alleged discriminatory or retaliatory intent? This would be the county saying, no, this fully complies with the building permit. And they told that to Gibson Island and Gibson Island is simply trying to re-urge those same arguments in this court. And there's Maryland case law. So the septic provision unreasonable because the county said you don't need it. What about the other conditions? The other ones. So no case has ever held that a request for being a difficult person is a valid consideration. And that- This is what Judge Niemeyer was talking about. I think, well, I don't, you think we can just find as a matter of law under no circumstances can this kind of condition ever be attached? Okay, first of all, yes, you could find that because any such condition would be not consistent with the Fair Housing Act. However, on these facts, if this court wants to go further, so Judge Berner, you asked about what if there were another home right across, right outside the way? Well, there is another home. There's the Mountain Road spot, which is, so to get to Gibson Island, like about a third of a mile before you get to the gate for the gated community, that is where the Mountain Road facility was. And the Windmill Point, the folks on the other side of the security gate, they were coordinating with our clients to put, to block group homes anywhere. But I'm sorry, and I'll let this go in a minute. If I think we can say this record compels that judgment, it's the only way to read the record, then I don't understand why you think you have to go to a jury on discrimination and retaliation. It seems like you're making- Your Honor, you could actually find as a matter of law that there was a discriminatory intent here. We did not move for summary judgment on that aspect. So I am arguing what our cross motion for summary judgment argued. It also wouldn't, in terms of the jury verdicts it wouldn't advance the ball necessarily because that evidence would also go towards the delay damages and potentially punitive damages on the discriminatory treatment claim. And so all of that would be going to the jury anyway, the same evidence. So it doesn't, as a practical matter, advance the ball. What advances the ball, Your Honor, is to make sure we don't have to wait another two to three years for this, for the work to actually begin under the building permit because a delay for two or three years that this can wind through again is denial for another two to three years that there's no compro, there is another two to three years that there will be no facility whatsoever on Gibson Island for this purpose. All right, I think I see you going- I've gone away, thank you. All right, Ms. Tobin. Good morning, Your Honors, and may it please the court. I'd like to begin by sharing with the court the language of the accommodation that was actually requested by appellants and its states. And this is at Joint Appendix 1955. My clients presently request that the corporation grant a reasonable accommodation in the form of a waiver or a multi-year term for a modification of the business purpose restriction in subdivision three of the deed covenants to the extent necessary to permit them to operate an assisted living group home for nine seniors with disabilities at the Banbury property. That is precisely what the corporation offered the appellants, is an accommodation that consisted of a modification of the business purpose restriction such that it enabled the plaintiffs to operate an assisted living group home at Banbury for nine seniors with disabilities. As a result, the plaintiffs failed to make their burden that the defendant refused the accommodation that they requested, and therefore- I think that's really a difficult argument to make. The Gibson Island Corporation attached 23 conditions during the negotiations, 19 of those conditions were agreed to. So at that point, the accommodation request included the initial request plus 19 conditions agreed to. Otherwise they didn't reach agreement and they probably wouldn't can't reach agreement. I mean, it looked to me that the lawsuit itself was an indication they couldn't reach agreement. At that point, it ends. The accommodation has been denied because Gibson Island will give it only on the 23 conditions and they only got 19. The plaintiffs say, we only want the 19 conditions. And it seems to me the whole case should turn on the reasonableness and necessity and the standard we apply to assess the accommodation as amended by the 19 conditions. And if it turns out that it is reasonable and necessary for that, I mean, I understand the necessary thing not to be as big as everybody's making it out to be. It seems to me if you have a disabled house and you take away the stairs and put on a ramp, that would be necessary probably for the house and that would hardly be a big deal. And that's really the nature of the changes in this case. The bigger issue that seems to be, there's two issues I think lurking. One a real one and the other one, probably the legal one. The real one, it seems to me, it's a personal relations problem, but the real one is that the accommodation was unreasonable and nobody addressed that. If it's reasonable, it seems to me they're gonna get the accommodation. FHA requires it. And what goes into the reasonableness is a lot of, it goes into all these factors, but it does not look like Gibson Island Court is that much opposed to it on a pure reasonableness basis. But we didn't get that analysis. We get this whole record and fight and arguments about the conditions, which are irrelevant because they were never agreed to. So you have an accommodation request, you look at the accommodation request, analyze it under our case law. And that's really where we should be on this. And if the accommodation is unreasonable and not necessary, then Gibson Island can continue with its position. On the other hand, it sounds to me like Gibson Island would agree to this. There are a lot of statements to indicate this is not that much of a business intrusion. It's not like my hypothetical, but I raised that hypothetical just to point out that there's a whole spectrum on reasonableness. And we haven't addressed that. And that's clearly gotta be established and it's a factual question. Maybe it's a factual question, maybe not. So there are a number of cases, including Bryant Woods, who assess conditions and alternatives under the necessary prong of the analysis. And that's exactly what the court did here. We're not arguing the conditions. They never agreed to them. Well, and I- The conditions just represent the reasons you denied it. But the reasons you denied it should be assessed under the three prong standard, reasonable necessity and the promotion of the- And with respect, Your Honor, we didn't deny it. What we approved was an accommodation that would have enabled the plaintiffs to have a group home at Banbury for nine persons with disabilities. Then the question became, did- In fact, we learned in law school, I think all the students here know that when you have a counteroffer, and there's an offer and then a counteroffer, then that is a denial. And so there's no contract, there's no offer, there's no acceptance. It doesn't seem to me that you did accept. It seems to me that you said, no, you have to agree to these other conditions, which at least two of them seem to violate the FHA in and of themselves to place a financial condition, to place a waiver of your right to go to court. And so that there was no actual agreement. And I'm not aware that the cases require that there be agreement. The cases require that the defendant either offer to approve an accommodation or that they don't refuse an accommodation. But I am not aware of cases that require that the parties have an agreement, otherwise these issues- I didn't say that there was an acceptance. You don't need an agreement. What you need to do is assess the requested accommodation. And the requested accommodation did not include those four conditions. The requested accommodation included the opportunity to modify the business purpose restriction. Right, they asked for a waiver and they laid out a bunch of details as to what they were gonna do. And you guys requested 23 conditions, 19 of which were agreed to. That's right. Now, it seems to me when we're assessing whether that accommodation is reasonable, we don't assess why you turned down the other, why they didn't accept the four. That isn't the issue. The issue is whether they're entitled to go ahead with that accommodation based on the analysis we set forth beginning with number one, was it reasonable? And that was never addressed. And conditions keep sucking everybody into some discussion, which is irrelevant. That goes to the motive as to why you guys turned it down or they didn't take it. I mean, that arbitration condition is really, I've never seen anything like that. $100,000 deposit. Well, there's $100,000 deposit that is a mutual deposit as a precondition to initiating arbitration. I understand. We don't need to get into it because I don't think that's relevant to me. What's relevant is the fact that the accommodation that they submitted and that they agreed to modify on the 19 conditions, that's the accommodation on deck. And that accommodation has not been approved by the association. The association insists on four more conditions. They say they won't agree to them. So we're stuck with their requested accommodation. And so the only question is let's look at that and see whether that meets the standard. And Your Honor, looking at, I understand your perspective that the conditions are irrelevant. Our view is they don't come into the analysis in the same way because they're not related to disability. And the law is clear that- Can I kind of move you- Of course. Along. I wanna ask about the district court's analysis of the record. And the district court says several times that it absolutely cannot be disputed on this record that this septic condition was intended only to address environmental concerns. Is that the way you read the record? It is, yes. Okay, let me ask you about a couple of things. It's a completely novel condition. You've got emails back and forth with the Gibson Island president about how you could use septic permits to block the home. And then you've got, as your colleague pointed out, the fact that Gibson Island goes running to the County Department of Health and says, we want you to revoke their septic permit because we don't think it's good enough. And the department comes back and says, we're telling you again, it's good enough, it's adequate. And you think in light of all of that, no reasonable jury could have questions about why this condition was imposed? Yeah, I don't think that the record shows that the corporation went to the county and asked them to revoke the septic covenant that existed and ran with the land here. After the district court early in the litigation denied, granted the corporation's request for an injunction, it issued a cease and desist order to the plaintiffs to stop construction on the home until they had sought and received a reasonable accommodation. Because of the court's ruling, the corporation went to the county and asked them to revoke the building permit as to the home in general, but not specifically as to the septic. But the county comes back and says, this septic system is adequate. We know you think it's not enough for nine beds, but it is. And in light of all of that, you think a jury could not have questions about why this septic provision ended up in the memorandum of understanding? Because it's hard for me to see how a jury could not find this pretextual. My understanding of the district court's ruling in that respect was that the septic condition did not prevent plaintiffs- No, I'm talking about the several times that the district court says no reasonable jury could question the motive behind this provision. And I'm asking you, and I think you've said you agree, and I will let it drop. I'm giving you a chance if you want to say whether or not maybe you wanna walk away from that a little bit and explain why it's not necessary for you to win. Well, I may have missed the last part of your question, but- I wonder if you have an argument, I'm just giving you a chance, argue your case however you want, that whether that is right or wrong, we should still affirm the district court. Yes, I think you can affirm the district court on the following basis. The plaintiffs had the burden to show that they could not serve persons with disabilities in light of the four disputed conditions. And plaintiffs didn't- So what if one of the conditions was, you can build your house, but we want it covered in gold leaf? The plaintiffs would not be able to show that they can't serve elderly disabled people in a house made of gold. And on the district court's understanding, and I think yours too, doesn't matter. It's not necessary, we don't get to reasonableness. No, because the plaintiff in that circumstance could show under the law that the condition wouldn't make it financially viable to be able to operate the home. At least under the district court's analysis, you wouldn't get to that question because it's not necessary that a house not be made of gold in order to serve the community that is intended to be served here. But I think the district court's analysis went further and said that the plaintiffs had failed to show that the condition would prevent them from being able to operate the home. Same with a gold house, that condition does not prevent them from being able to operate a home. No, but they have the burden to show that the condition makes it financially viable or financially not viable or otherwise impossible to serve the persons with disabilities. And they haven't made that showing here. That's what the district court, as I read the court's opinion, found. There was a lack of evidence to say that the septic condition or the arbitration provision prevented the plaintiffs from being able to operate the home. That is my reading of what the district court found on that particular issue. Likewise, with the arbitration issue, the plaintiffs have the burden. They could and should have shown that these conditions that they claim are unreasonable were something that would get in the way of them operating and serving persons with disabilities. That is the focus of the Fair Housing Act. How are the plaintiffs able to provide housing for people with disabilities? And here they made no connection between their ability to operate the home and the four conditions. And that's where the district court, I think, rested the decision. Is there evidence of the motive or the purpose of the Gibson Island Corporation's conditions? Is there any evidence that this was because disabled persons were being served? It seems to me the record's pretty thin on that notion. It looks to me what is driving this dispute is the personality conflict. And the president said explicitly that if somebody else had made this request, we probably would have approved it or something like that. Where does that lead? I agree. And that's why this is not discriminatory as to persons with disabilities. It doesn't make the first part go away, does it? The waiver issue. In other words, we have three components in this case. One is the request for accommodation. And that is just a rational analysis of the accommodation under the three components that we've established in law. The second is discrimination based on home. And there, to me, the evidence seems pretty thin. I'll ask the other side on that too. But the evidence seems to be pretty thin. And then the retaliation, you've already heard some comments about that. But it seems to me this case should be a straightforward assessment of the accommodation request under our analysis. And I must say, based on the record, it looks like you guys will probably make an accommodation under that assessment. But I don't think we need to go into why you turn down the accommodation with those four conditions. That's just motive. And if those motive is because the people were disabled, that doesn't appear. Those conditions relate to the personality of the person you're dealing with because he's litigious. And so discrimination seems to be a different issue. But I must say, with respect to the first count, I thought everything got off track. I agree with your characterization of the evidence of intentional discrimination. It is too thin. And the court was correct to grant summary judgment in the corporation's favor on that count. And with respect to retaliation, they have a real standing problem. I don't understand the standing problem. I thought the inquiry, and I'm just wondering if there's any case law to support the position that the district court adopted. The inquiry under retaliation is whether the action would deter an objectively reasonable person from, in this case, continuing to advocate on behalf of the disabled and the FHA. And I just don't see how it can be that if you target Lucy, that doesn't deter the LLCs and vice versa because it's all the same person and all the same decision maker. Obviously, targeting Lucy will deter the LLCs. I don't see the problem. Below what the plaintiffs relied on for their retaliation evidence was some of the personal issues with respect to Mr. Lucy. But how does that not deter the LLCs from going forward with this project, given that it's Mr. Lucy who's making the decision? I think that what the court correctly found was that the corporation, the two entity plaintiffs didn't have the ability to bring the false light portrayal issues on his behalf. I'm just asking you why that is right, given the point of retaliation being about, for instance, if a parent calls a public school to complain about treatment of her daughter and the school responds by taking adverse actions against the daughter, that obviously has a chilling effect on the mother. And I've never seen any kind of retaliation case law that would split the atom the way you're suggesting here. Yeah, I think there's a waiver problem here that the appellants have because they really didn't challenge the court's ruling as to standing. So the issue wasn't fully briefed before this court because they didn't raise it in their opening brief. And so I think they've waived the right to bring the claim now. I do wanna return to Judge Niemeyer's question because he questioned how some of the evidence that is related to the necessity prong in terms of the personal animosity. There's no doubt there has been a lot of conflict between Mr. Lucey and his neighbors and including the corporation. But under the reasonable accommodation analysis, the necessity prong, of course, includes the equal opportunity component of that. The plaintiff has the burden to show that the requested accommodation is necessary to deliver an equal opportunity to persons with disabilities. And those two things, as we know from Bryant Woods and other cases are closely tied together. When Mr. Lucey demands an accommodation that would not put some of what I think of as the business restrictions, the arbitration, the escrow, the guarantors. When he rejects those business conditions, he is asking not for an equal opportunity for persons with disabilities. He is asking to be put in a position that disregards the consequences of his own actions and the business restrictions. I will be brief. The consequences of his actions. I mean, Judge Niemeyer has been talking about he seems very litigious. And so that's why these conditions might be appropriate. But the problem is that he's litigating at least in part on behalf of the FHA. That's protected conduct. And I'm hearing you basically saying because of his protected conduct in advocating for housing for the elderly disabled, we impose these conditions. I mean, how is that not expressly retaliatory? His initial conduct in terms of violating the restricted covenants, the architectural covenant and the business restriction covenant was not protected activity. It was in violation of those covenants. The district court found that he was flagrantly in violation of those covenants. And at the time, that is not protected litigation activity. Right, this is, I feel like the bad feeling is much more longstanding than that. And it's based, I mean, on your own account, it is based at least in part on, I think the way you would put it is Lucy being like bossy and unreasonable and a huge pain in the neck in his efforts to find a property in which he can build a group house for the elderly disabled. And that, like, I think that's very tricky to untangle for you because it does sound kind of like retaliation. Well, I think that had Mr. Lucy come to the corporation from the outset and requested the accommodation before he began construction and the other things that led to the filing of this litigation, we might be in a different place. But he demonstrated a willingness to violate the covenants and the rules of the corporation. And that is what began the difficulty of the litigation that followed and the need to have some of those business restrictions in place. All right, thank you. Thank you, your honors. Mr. Klepper. Judge Niemeyer, you said the record was thin. We have the smoking gun. Joint Appendix 1831. Tuesday, June 9th, 2020. It is two weeks after Judge Bennett saying you're going to have to do the interactive process. It is the day before that is Mr. Lucy submits the accommodation request. And Kevin Reed, a board member, he's a member of both the club and interlocking member of the board, the GIC's board. He writes to Dave Weinberg, who is the accommodations committee chair. It hasn't been announced yet, but he says you'll need this for your accommodation. And he says the offensive part is that Lucy is marketing the island more than anything else with a clear suggestion that residents in his facility will have access to everything on the island, although he doesn't mention the club. He's a member of the club. He's a member of the board. They have, each of them, have a majority of interlocking directors. He wasn't a decision maker, was he? Oh, he had a vote, Your Honor. He was a decision maker. That came much later. Your Honor, he said that to the, a board member said that to the chair of the accommodations committee. Now, under a helping hand, Your Honor, it was presumed under far less, presumed as a matter of law. I mean, if you step back and read this record, this record looks like to me that this accommodation would have gone ahead smoothly. They would have gone ahead and made the adjustments necessary in every respect, except for the fact that they didn't want to deal with this guy and they were worried about his overstepping his bounds later and trying to prevent a litigation. Now, that's what I read between the lines. So as a matter of judicial review, though, we have to review the record for what it is. And the record for what it is has a requested accommodation modified by 19 conditions. And the question is, should that have been approved? Under a helping hand, Your Honor? And I think the answer would be, let's have the district court analyze it under our case law. Under a helping hand, Your Honor, even if he hadn't been, even if these were purely the community members, they would be attributed to the board's ultimate action unless the board rebutted that presumption. There is a presumption here. This is a board member telling the head of the accommodations committee, this is my mens rea. There is nothing on this record consistent with the FHA and I really want to stress the Maryland Fair Housing Act. I don't want us to lose sight of that. If you want to know what the temperature of the Supreme Court of Maryland would be on this, we just would just look at a case very well known to the students in this room in Ray Chavis. That was a case where the Supreme Court of Maryland departed from two other state Supreme Courts and how things done were across the country to say as a matter of law, despite some disputes in the record, this accommodation, in that case, it's a law student who was seeking the same accommodations on the bar exam they'd had in law school. They, the state board of law examiners had the same expert who gets used around the country to say no and say, you have to reprove your disability and then recommends lesser accommodations to the bar exam. The Supreme Court of Maryland said no over all kinds of objections that there were disputed facts as they applied, because as a policy map to further the purposes of the Americans with Disabilities Act, they set up what is essentially a presumption that whatever accommodations received on the bar exams in law school, you will get for the bar exam. Now, that is something that is consistent with a helping hand. It is consistent with the Fair Housing Act saying we want to provide fair housing subject to constitutional limitations. And I will tell you, Your Honor, that if this is remanded for further proceedings, Gibson Island Corporation will have won for two to three years because they will have kept this process from beginning. And remember what Dr. Varn said. People leave Gibson Island because they have no place to go. They called him a puppet for saying that.  No one in this community, there are plenty of people in this community who agree with Mr. Lucey. And Dr. Varn said, I've worked with him for years, haven't had a problem. As soon as you stand with Lucey, you stand against the loudest people on the island who are saying no. They will have won, Your Honor, for a period of two to three years. Now is the time for bold action. We are at possibly the lowest point in decades for people who struggle with disabilities. They're being scapegoated for plane crashes right now. This is the time for this court to be bold and give every bit of relief that is justified. And if you look at the Maryland case law and the Maryland verdants, yes, we have a clear entitlement under federal law, but oh boy, do we have one under Maryland. Okay, so with that, thank you. Thank you. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Pamela A. Harris, Nicole G. Berner